UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA ESTHER CARDENAS, | § | |
| *Plaintiff*, | § § § | |
| v. | § | Civil Action No. SA-12-CV-962-XR |
| APARTMENT INVESTMENT AND MANAGEMENT CO. (AIMCO), ET AL., | § § § § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion to Remand (docket no. 10) and the Response thereto. After careful consideration, the Court will grant the motion.

**Background**

Plaintiff Maria Esther Cardenas filed her original petition in Bexar County district court on August 31, 2012. The petition alleges that Defendants wrongfully denied Plaintiffs' applications to lease an apartment at Ingram Square and San Jose Apartments. The petition alleges that both apartment complexes are federally subsidized housing complexes with project-based section 8 contracts under which tenant rents are subsidized. AIMCO manages both complexes. Its tenant selection policies bar any person from admission who has been (1) convicted of a felony, (2) convicted of a misdemeanor involving violence, (3) convicted of possession, use, or distribution of a controlled illegal substance, or (4) engaged in drug-related criminal activity, violent criminal activity, or other criminal activity that did threaten the health, safety or right to peaceful enjoyment of the premises by other residents or management agents, contractors, subcontractors, or owners. The

1

petition alleges that "AIMCO illegally denies applicants with such offenses on their record regardless of how long ago they engaged in the conduct and regardless of the nature of the offense" and that Defendants "wrongfully denied Ms. Cardenas's application because of a misdemeanor plea of no contest in 2008 to a charge of 'failure to identify; fugitive; intent to give false information.'"

The petition further alleges that, under the Section 8 Set-Aside program, owners must comply with numerous federal regulations, and that Congress has limited the discretion owners have in the selection of tenants. The petition asserts that "Congress gave owners authority to deny admission to an applicant household who '**during a reasonable time** preceding the date when the applicant household would otherwise be selected for admission, engaged in any drug-related or violent criminal activity or other criminal activity which would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents.' See 42 U.S.C. § 13661(c) (West 2012) (emphasis added)."

The petition alleges that HUD regulations also restrict discretion in selecting tenants, citing 24 C.F.R. § 5.855, which states:

> (a) You may prohibit admission of a household to federally assisted housing under your standards if you determine that any household member is currently engaging in, or has engaged in during a reasonable time before the admission decision:
>
> (1) Drug-related criminal activity;
> (2) Violent criminal activity;
> (3) Other criminal activity that would threaten the health, safety, or right to peaceful enjoyment of the premises by other residents; or
> (4) Other criminal activity that would threaten the health or safety of the PHA or owner or any employee, contractor, subcontractor or agent of the PHA or owner who is involved in the housing operations.
>
> (b) You may establish a period before the admission decision during which an applicant must not have engaged in the activities specified in paragraph (a) of this section (reasonable time).

2

Plaintiff further alleges that the HUD Occupancy Handbook, which is binding on owners such as Defendants, specifies that owners must establish reasonable criminal history look-back periods.

The petition alleges that Plaintiff is a person with disabilities who relies on Social Security SSI and has no convictions for any violent or drug-related criminal activity. She applied for an apartment at San Jose on May 3, 2011 and at Ingram Square in June 2011. She met the financial eligibility requirements for admission to both complexes, but she was denied admission. The rejection letters stated "Criminal History unsatisfactory." The criminal history report relied upon stated "fail to ID fugitive intent to give false info" with an offense or filing date of May 2008. Plaintiff appealed the denial of admission to San Jose, and her appeal was denied on February 10, 2012. Plaintiff alleges that AIMCO's denial wrongly stated that she had two offenses and also wrongly concluded that she had engaged in conduct that would constitute a threat to the health, safety, or peaceful enjoyment of the premises by other tenants. Plaintiff also appealed the denial of admission to Ingram Square, and her appeal was denied on May 17, 2012, citing the 2008 offense.

Plaintiff alleges that Defendant AIMCO "illegally denies applicants with [certain] offenses on their record regardless of how long ago they engaged in the conduct, regardless of the nature of the offense, and regardless of the current ability of the applicant to comply with the lease. The resident selection criteria do not include a 'failure to identify, giving false information' charge among the offenses that might constitute grounds to deny an application. The policies specify no time limits with respect to the criminal history period that will be considered." Plaintiff asserts that her criminal conduct occurred more than three years before her applications were denied and was neither drug related nor violent, nor would it constitute a threat to the health, safety, or right to peaceful enjoyment of other tenants.

3

Plaintiff asserts the following state-law causes of action: (1) violation of § 17.46(b) of the DTPA, which prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce, because Defendants' representation that they had the legal right under governing federal law and regulations to deny Plaintiff's application for subsidized housing on the basis of a failure to identify conviction were false, misleading, and deceptive; (2) violation of § 17.50 of the DTPA because Defendants took advantage of Plaintiff to a grossly unfair degree in rejecting her application based on resident selection criteria that fail to comply with federal law and regulations; (3) negligent misrepresentation because Defendants did not exercise reasonable care or competence in applying their tenant selection criteria in considering Plaintiff's application or developing their tenant selection criteria; and (4) declaratory relief under the Texas Uniform Declaratory Judgments Act.

Cardenas seeks (1) a declaratory judgment that Defendants' tenant selection policies violate the DTPA, (2) an injunction directing Defendants to revise their tenant selection policies to conform to the requirements of the DTPA, (3) a declaratory judgment that Defendants wrongfully rejected Plaintiff's application, (4) an injunction directing Defendants to offer to lease to Plaintiff the next available one-bedroom apartment at her choice of Ingram Square or San Jose Apartments, and (5) damages and attorney fees for the wrongful denial of her application.

Defendants removed the case on October 9, 2012, arguing that federal question jurisdiction exists because Plaintiff's claims rely on the interpretation of federal guidelines governing the screening of applicants for federally subsidized housing, including 42 U.S.C. § 13661, 24 C.F.R. § 5.855, and the HUD Handbook. On November 12, Plaintiff moved to remand, arguing that federal question jurisdiction is lacking because her state-law claims do not raise a substantial disputed federal question.

**Analysis**

The Supreme Court has not stated a specific test to determine whether "arising under" federal question jurisdiction exists when a plaintiff asserts only state-law claims. However, the Fifth Circuit has framed the inquiry as follows:

> "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citation omitted). The question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 808 (1986).

**A. whether resolving a federal issue is necessary to resolution of the state-law claim**

In the motion to remand, Plaintiff asserts that she has alleged that AIMCO illegally denied her application on the bases that (a) she had committed two offenses when in fact there was only one, and (b) she had engaged in conduct that would constitute a threat to the health safety, or peaceful enjoyment of the premises by other tenants, which she had not. Plaintiff contends that her state-law claims based on these facts do not require the resolution of any substantial federal issues. Plaintiff also argues that AIMCO's tenant selection policies on criminal history specify no time limits with respect to the criminal history period that will be considered, while federal law requires that the applicant have engaged in the illegal activity a "reasonable time" prior to the admission decision. Plaintiff asserts that her claims are premised on AIMCO's complete lack of any timeframes with respect to the criminal history period that will be considered, and not what a "reasonable time" period

is. Thus, she argues, her claims do not hinge on the resolution of a substantial federal issue.

In contrast, Defendants argue that Plaintiff's injunctive and declaratory relief depends on whether Defendants have violated the federal statutes and regulations. Defendants argue that whether a federal law is essential to a state-law claim hinges on whether the federal right or obligation, as incorporated within a state-law claim or claims, is such that it will be supported if the federal law is given one construction and defective if it is given another. Defendants contend that federal law is essential to Plaintiff's right to relief under her declaratory judgment claim because she seeks a declaration that Defendants' tenant-screening policies and rejection of her application violate federal law.

The Court must refer to the Plaintiff's petition, rather than her motion to remand, to determine whether a federal issue exists. Plaintiff's first cause of action under the DTPA alleges that "Defendants' representation that they had the legal right under governing federal law and regulations to deny Ms. Cardenas's application for subsidized housing on the basis of a failure to identify conviction were false, misleading, and deceptive." Thus, this claim depends on a determination of whether Defendants' representation of its right under federal law and regulations is false. In turn, this determination is based on a construction of Defendants' rights under federal law and regulations.

The second DTPA claim alleges that "Defendants took advantage of Ms. Cardenas to a grossly unfair degree in rejecting her rental application pursuant to resident selection criteria that fail to comply with federal law and regulations." Again, this claim depends on whether the criteria "fail to comply with federal law and regulations," which requires a determination of what federal law and regulations require.

Defendants also correctly point out that Plaintiffs' declaratory judgment request, which

requests a declaration that "Defendants illegally rejected Plaintiff's application for subsidized housing," must also be determined on the basis of whether Defendants complied with federal law and regulations. Although framed in terms of whether the tenant selection policies "comply with the DTPA," whether they comply with the DTPA is determined by whether they comply with the cited federal law and regulations.

Although Plaintiff appears to argue in her motion to remand that she is only claiming that Defendants violated their own tenant screening policy, which does not require a resolution of any federal issue, the allegations of the petition are not so limited. Thus, the Court concludes that resolution of a federal issue is necessary to resolve at least some of Plaintiff's claims.

**B. whether the federal issue is disputed**

Plaintiff asserts that AIMCO's notice of removal did not identify any disputed federal issue, but even if there is one, the Court must still remand because the other factors are not satisfied. Defendants do not directly address this issue, but have filed a general denial and their response to the motion to remand indicates that they dispute whether their actions and tenant selection policies violate federal law or regulations.

**C. whether the federal issue is substantial**

Plaintiff argues that whether AIMCO's conduct in denying her application for a non-violent, non-threatening, non-drug-related offense violated the DTPA and constituted negligent misrepresentation raises no substantial federal question. Plaintiff also argues that because federal law does not provide a federal remedy for violation of the statute, this weighs heavily in support of the conclusion that no substantial federal question is present. Defendants argue that the questions of federal law are substantial because the very essence of Plaintiff's claims is that Defendants' tenant-

7

screening policies and procedures violate federal law and an interpretation of federal law is likely dispositive of Plaintiff's claims.

The statute cited by Plaintiff, 42 U.S.C. § 13661, which governs "screening of applicants for federally assisted housing," provides that certain individuals are ineligible for admission to the program or for admission to housing. In addition, it provides that an owner of federally assisted housing may deny an application if it "determines that an applicant . . . is or was, during a reasonable time preceding the date when the applicant household would otherwise be selected for admission, engaged in any drug-related or violent criminal activity or other criminal activity which would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents, the owner, or public housing agency employees . . . ." The regulations cited by Plaintiff are located in Subpart I, entitled "Preventing Crime in Federally Assisted Housing-Denying Admission and Terminating Tenancy for Criminal Activity or Alcohol Abuse." Section 5.855 provides that housing providers "may prohibit admission" if they determine that a household member is engaged in, or has engaged in during a reasonable time before the admission decision, drug-related criminal activity, violent criminal activity, or other criminal activity that would threaten the health, safety, or right to peaceful enjoyment of the premises by others or by owners or employees." 24 C.F.R. § 5.855. It also states that housing providers "may establish a period before the admission decision during which an applicant must not have engaged in the activities specified in paragraph (a) of this section (reasonable time)."

Although the petition contends that the HUD Occupancy Handbook "specifies that owners must establish reasonable criminal history look-back periods," the Court finds no such requirement. Plaintiff cites the June 2007 version of the HUD Handbook 4350.3 at Chapter 4-7-C-3. However,

the 2009 version states "If an owner's admission policy includes any of the activities above or similar restrictions that uses a standard regarding a household member's current or recent actions, the owner *may* define the length of time prior to the admission decision during which the applicant must not have engaged in the criminal activity. The owner shall ensure that the relevant 'reasonable' time period is uniformly applied to all applicants in a non-discriminatory manner and in accordance with applicable fair housing and civil rights laws."

It appears undisputed that neither the statute nor the regulations provide a cause of action or right to relief for the alleged violations. Accordingly, Plaintiff cites to *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814, 817 (1986), in which the Supreme Court "conclude[d] that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction" and "that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" Defendants do not address Plaintiff's reliance on *Merrell Dow* and the argument that no private right of action exists for violations of the cited federal law or regulations.

The Supreme Court later clarified, however, that the lack of a private cause of action is "relevant to, but not dispositive of," the question of whether the right was substantial enough to satisfy the exercise of federal jurisdiction. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545

U.S. 308, 318 (2005).[1] Nevertheless, the Court noted that the lack of a cause of action is "an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." The Court "saw the missing cause of action not as a mising federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* at 318. Thus, this issue "fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." *Id.* at 319.

The Fifth Circuit emphasized in *Singh* that the fact that a violation of federal law is an element of the state-law tort claim is insufficient to render the federal issue substantial. *Singh*, 538 F.3d at 338-39 & n.4. Further, the fact that no private right of action or other remedy exists for violation of the statute and regulation cited by Plaintiff indicates that Congress did not intend for such claims to be litigated in federal court. Moreover, although federal statutes, regulations, and the HUD handbook must be consulted to evaluate Plaintiff's claims, the federal issues presented are not substantial in and of themselves.

In *Grable*, the Court noted that the Government had a strong interest in the availability of a federal forum to construe a federal tax provision. In this case, in contrast, although HUD administers the Section 8 program and provides guidelines, HUD and federal interests are minimal as there is no

---

[1] Some post-*Grable* decisions have relied on *Merrell Dow* to find a lack of subject matter jurisdiction when no private right of action exists. *See Saadat v. Landsafe Flood Determination, Inc.*, 253 Fed. Appx. 343, *1 (5th Cir. 2007) ("A complaint that alleges a violation of a federal statute as an element of a state cause of action, when there is no private cause of action under the statute, does not state a claim conferring federal question jurisdiction.").

question involving program eligibility or administration, no agency action is under consideration, and Plaintiff alleges no violation of any mandatory provision.

The HUD Handbook makes clear that screening is a determination of suitability of tenancy, based on a number of factors, and is not a determination of eligibility for the Section 8 program. HUD Occupancy Handbook at 4-7. Although the statute and regulations require housing providers to screen out applicants with certain types of criminal histories, Plaintiff is not claiming a violation of any such mandatory requirement. HUD's primary interest in this regard is in providing standards for safe, low-income housing by making certain individuals ineligible for participation or housing. Plaintiff's allegations are based on the permissive provisions, which permit or expressly authorize housing owners to deny applications for other types of criminal activity, and thus the claims do not implicate HUD's interest in ensuring safe, low-income housing.

"Owners are permitted to establish and apply written screening criteria to determine whether applicants will be suitable tenants." HUD Occupancy Handbook 4-7-B.1. Owners "may choose to expand the [mandatory exclusion] requirements regarding prohibition of admission to certain applicants." *Id.* Further, "[t]he provisions of [Subpart I] do not constrain [housing providers'] authority to screen out applicants who [they] determined are unsuitable under [their] standards for admission." 24 C.F.R. § 5.851.

As noted, Plaintiff alleges no violations of any mandatory provisions of any federal statute or regulation and no important federal interests are at stake or under consideration. Whether Plaintiff's particular conviction was committed "during a reasonable time preceding" her application, whether it threatened the health, safety, and right of peaceful enjoyment of the property by others, whether Plaintiff had two convictions or one, and whether Defendants violated their own screening policies

11

are fact-based inquiries that do not present a substantial federal question or implicate important federal interests.

**D. whether federal jurisdiction would disturb the balance of federal and state judicial responsibilities**

In determining whether "arising under" jurisdiction exists, courts must be careful not to open the federal courthouse doors to traditionally state cases. In *Merrell Dow*, the Supreme Court expressed concern that finding federal jurisdiction for negligence per se cases based on violations of federal law would increase the volume of federal litigation. In contrast, the *Grable* Court noted that it is a rare state quiet title action that involves contested issues of federal law, and thus jurisdiction over such actions would not materially affect, or threaten to affect the normal currents of litigation.

This case involves claims that defendants violated the DTPA and made negligent misrepresentations by misrepresenting federal law and regulations. These types of claims are creatures of state law and states interests have traditionally been dominant. *See Singh*, 538 F.3d at 340 (noting that legal malpractice is an area in which states have traditionally been dominant). Permitting such claims to proceed in federal court is like permitting negligence per se or legal malpractice claims, as many such claims could be based on misrepresentations of federal laws and regulations. Thus, finding jurisdiction here would disturb the balance of federal and state judicial responsibilities. *See Singh*, 538 F.3d at 340 & n.7 (noting that finding arising under jurisdiction cases for legal malpractice claims when underlying litigation involved federal claims would reach "so broadly that it would sweep innumerable state-law malpractice claims into federal court" because "federal jurisdiction could extend to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim").

## Conclusion

After evaluating the relevant factors, the Court concludes that federal "arising under" jurisdiction is lacking. Even if the first and second elements of the "arising under" test are satisfied, jurisdiction may be found lacking if the third and fourth factors are not. *See Singh v. Duane Morris*, 538 F.3d 334, 338 (5th Cir. 2008). Because the federal issues presented are not substantial and federal jurisdiction would considerably intrude on state authority, Plaintiff's DTPA and negligent misrepresentation claims do not "arise under" federal law. Accordingly, Plaintiff's motion to remand (docket no. 10) is GRANTED. The case is remanded pursuant to 28 U.S.C. § 1447(c), (d).

It is so ORDERED.

SIGNED this 29th day of November, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE